# IN THE COURT OF APPEALS OF IOWA

No. 23-0816
Filed February 5, 2025

**GARY CHARLES WOOD Jr.,**
    Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
    Respondent-Appellee.

_____

Appeal from the Iowa District Court for Polk County, David Nelmark, Judge.

Gary Wood Jr. appeals the district court's denial of his application for postconviction relief. **AFFIRMED.**

John J. Bishop, Cedar Rapids, for appellant.

Brenna Bird, Attorney General, and Olivia D. Brooks, Assistant Attorney General, for appellee.

Considered by Greer, P.J., Langholz, J., and Bower, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2025).

**BOWER, Senior Judge.**

Gary Wood Jr. appeals the district court's denial of his application for postconviction relief (PCR) following his 2019 conviction for domestic abuse assault.[1] Wood claims his appellate counsel was ineffective by failing to challenge the admissibility of a redacted 911 call on direct appeal. Because Wood did not establish prejudice, his ineffective-assistance-of-counsel claim fails. Accordingly, we affirm.

## I.    *Background Facts and Proceedings*

In the ruling affirming Wood's conviction on direct appeal, our court set forth the following background:

> On June 30, M.M. called 911 from her apartment "screaming for help." She told the dispatcher Wood "was making his way into her house" and she was afraid "he was going to kill her." While relaying that information, she saw Wood break in through a window and stab her son's friend[2] with a screwdriver. When officers arrived, they secured Wood in the back of a patrol car.
> During their investigation, Officers Mitchell Froehle and Dustin Wing noticed M.M.'s black eye. When they asked about her injury, M.M. said Wood "struck her in the face" during an argument on June 24. M.M. explained she did not report the assault "out of fear" from Wood's warning—"he was willing to catch that number-one." She understood that to mean "he was willing to take a murder-one charge." Wood instructed her "to tell her coworkers that she was assaulted by two unknown males near where she worked." Based on that conversation, police arrested Wood for domestic abuse assault causing bodily injury. The district court then issued a no-contact order protecting M.M.
> In August 2019, the State charged Wood with third-offense domestic abuse assault. The trial information alleged Wood had twice before been convicted of domestic abuse assault: once in September 2018 and once in June 2019. In an amended trial

---

[1] In a bifurcated trial, another jury found sufficient evidence supporting third-or-subsequent-offense and habitual-offender enhancements.

[2] Police later learned from M.M.'s son that he sent his friend to his mother's apartment to protect her from Wood, believing her life was in danger.

information, the State added a habitual-offender enhancement based on 2003 and 2015 felony convictions.

While awaiting trial in jail, Wood violated the no-contact order more than thirty times by communicating with M.M. through text messages, phone calls, and virtual visits, according to the State's complaints. The State asked the district court "to restrict [Wood's] avenues of communications" because he allegedly was threatening her not to come to trial. The State also moved for a preliminary ruling on the admissibility of evidence, including the 911 call, jail recordings, and M.M.'s statements to police implicating Wood. *See* Iowa R. Evid. 5.104(a). The motion stated: "[M.M.] has since minimized the allegation of abuse and has become uncooperative due to [Wood's] manipulation through his jail communication in violation of the No Contact Order." Besides arguing hearsay exceptions, the State claimed Wood forfeited his right to object under the Confrontation Clause because he intimidated her into not testifying against him.

On the first day of trial, the district court held an evidentiary hearing to address the State's forfeiture-by-wrongdoing claim. Investigator Kim Smith of the Polk County Attorney's Office recounted her many attempts to serve M.M. with a subpoena the week before. Smith could not find M.M. at her residence or the convenience store where she worked. The investigator called and left messages, but received no response. The investigator eventually left the subpoena in her door and a note in her mailbox asking her to call. She did not respond. And despite Smith personally serving M.M. with the subpoena on the day before trial, M.M. failed to appear at the courthouse for trial. Based on his interactions with M.M. and Wood, Officer Froehle believed it was "[i]ntimidation and fear" that prevented M.M. from cooperating with the prosecution.

Also as evidence of Wood's wrongdoing, the State offered ten recorded jail conversations between him and M.M. from July and October. After reviewing those recordings, the district court agreed: "Wood intended to prevent . . .[M.M.] from testifying through manipulation, control, threats, and the use of language, in violating the no-contact order to accomplish that goal." Because he caused M.M.'s absence, the court ruled Wood forfeited his right to raise confrontation objections to the use of her statements during trial.

Still, the State had other evidentiary hurdles in admitting that evidence. The defense acknowledged M.M.'s statements "directly implicating [Wood] on the 24th of June as the person who caused the black eye" were unobjectionable under the forfeiture ruling. But the defense argued all other statements, including "statements about how he has done this to her in the past, terrorized her in the past," or "told her subsequently what story to tell" should be excluded as unfairly prejudicial and improper character evidence. *See* Iowa Rs.

Evid. 5.403, .404. The defense also resisted admission of the 911 call and jail recordings as irrelevant.

In the end, the district court found M.M.'s statements that Wood assaulted her on June 24, that he expressed his willingness to face a murder charge, and that he told her to fabricate a story were all admissible. As for the various recordings, the court allowed the jury to hear a redacted version of the 911 call and one jail recording as evidence of Wood's consciousness of guilt.

The jury found Wood guilty of domestic abuse assault.

*State v. Wood*, No. 20-0327, 2021 WL 3895909, at *1–2 (Iowa Ct. App. Sept. 1, 2021) (alterations in original). This court rejected Wood's challenges to the district court's finding he forfeited his right to object to M.M.'s statements under the Confrontation Clause, the sufficiency of the evidence supporting his conviction, and the sentence imposed by the court. *Id.* at *3–6.

Wood filed a PCR application. Following the PCR trial—at which the court heard testimony from Wood, Wood's trial counsel, Wood's appellate counsel, and the county attorney—the district court denied the application. Wood appeals.

## II. Standard of Review

"We ordinarily review PCR rulings for correction of errors at law." *Brooks v. State*, 975 N.W.2d 444, 445 (Iowa Ct. App. 2022). "However, when the applicant asserts claims of a constitutional nature, our review is de novo." *Ledezma v. State*, 626 N.W.2d 134, 141 (Iowa 2001). Accordingly, we review Wood's claim of ineffective assistance of counsel de novo. *See id.*

## III. Discussion

On appeal, Wood claims his appellate counsel was ineffective by not challenging the admissibility of the recording of M.M.'s 911 call. According to Wood, the evidence was not relevant and, even if it was, its probative value was

substantially outweighed by the danger of unfair prejudice. *See* Iowa Rs. Evid. 5.401, 5.403.[3]

To establish ineffective assistance of counsel, Wood must show (1) counsel's performance fell below objectively reasonable standards and (2) if counsel had acted differently, there would have been a reasonable probability of a different outcome at trial. *Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984). At the PCR trial, appellate counsel stated he "considered" raising "that particular issue," but he "just didn't feel it had merit on appeal" so he opted to focus on other claims. That strategic decision was not a breach of duty. *See Ledezma*, 626 N.W.2d at 143 ("Miscalculated trial strategies and mere mistakes in judgment normally do not rise to the level of ineffective assistance of counsel.").

In any event, if Wood's ineffective-assistance claim "lacks prejudice, it can be decided on that ground alone without deciding whether the attorney performed deficiently." *Id.* at 142. Here, we find any alleged deficiency by appellate counsel did not affect the outcome of the trial. The dispatcher testified at trial, stating a "frantic" M.M. called 911 on June 30, 2019, "screaming for help because a male was making his way into her house." The dispatcher stated M.M. "was threatened—feeling threatened, said that he was going to kill her. And there was another gentleman there, and they got into an altercation with weapons." Officer Froehle then testified about his response to the scene, describing M.M. as

---

[3] The district court did not rule on Wood's challenge to the admissibility of the 911 recording under rule 5.404(b); accordingly, error is not preserved on that portion of Wood's claim. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("[I]ssues must ordinarily be both raised and decided by the district court before [appellate courts] will decide them on appeal.").

"[t]errified," with "a visible black eye"—"[s]he had stated that on June 24th, 2019, [Wood] and her were in an argument in which [Wood] had struck her in the face, causing pain and resulting in a black eye." As this court previously observed,

> Both M.M. and a neighbor identified Wood as the perpetrator. The neighbor corroborated M.M.'s statement that she sustained the injury on June 24 while arguing with Wood. Despite her injury, M.M. declined to report the abuse because she believed Wood would retaliate with murder. That belief manifested in her statement to dispatch that she feared "he was going to kill her." And it explained why M.M.'s son was concerned for his mother's safety. So much so that he asked his friend to stay with her as a form of protection.

*Wood*, 2021 WL 3895909, at *3.

Considering the overwhelming evidence in the record, Wood has not shown "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Ledezma*, 626 N.W.2d at 143 (quoting *Strickland*, 466 U.S. at 694). Accordingly, his claim of ineffective assistance of counsel fails. We affirm the court's denial of Wood's PCR application.

**AFFIRMED.**